## STANDARD OIL COMPANY *vs.* NANCY G. W. HARTMAN.

*Negligence—Collision Between Vehicles on Country Road on a Dark Night—Questions for the Jury.*

Defendant's large, heavy wagon, drawn by three horses abreast, with the single trees projecting beyond the hub on either side and the outside horses going outside the wheel tracks, was being driven along a much travelled country road on a dark winter evening, when it collided with plaintiff's one-horse buggy. At the point of collision all of the road-bed, which was about twenty-nine feet wide, could be used, but defendant's wagon was being driven so far to the driver's left that plaintiff, who was coming from the opposite direction and driving to her right, did not have space to pass between the wagon and a fence to the right. There was no light on defendant's wagon, and after perceiving its proximity, plaintiff did not have time to avoid the collision. Both drivers were well acquainted with the road. *Held*, that there was sufficient evidence of negligence on the part of the defendant to be submitted to the jury, and that the jury was also properly instructed that the burden of proof was upon the defendant to show that plaintiff's negligence contributed to the injury.

Appeal from the Circuit Court for Queen Anne's County (MARTIN and BROWN, JJ.), where there was a judgment for plaintiff for $2,500.

The cause was argued before McSHERRY, C. J., PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ

*Roger W. Cull* and *Phil. B. Hopper*, for the appellant.

The Court erred in granting the plaintiff's prayer, because:

1. There was no evidence that the road was a public highway.

2. There was no evidence of any custom in Maryland requiring travellers on the public highway always and under all circumstances to "keep to the right," and making it actionable negligence not to do so.

3. Without such evidence the jury could not know of any such custom nor take as evidence, or as an element in the evdence, of the negligence they were required to find, unless such a custom actually existed, and the Court, taking judicial cognizance of it, instructed the jury what the custom was, what it required and when and how far its non-observance, if found by them, went to make out actionable negligence on the part of the defendant.

But the prayer under consideration has not a word to say about a custom in Maryland requiring travellers to keep to the right. Indeed, this Court can read the declaration and the prayers granted the plaintiff and still not form the slightest conception of what the negligence consists which is complained of. It is, as before observed, only by reference to the testimony that one can learn what the negligence of the defendant was which is complained of.

Even if there does obtain in Maryland a custom, as in some other States, called "the law of the road," and even if this custom is one of which the Court will take judicial notice and so instruct the jury, still, "this law of the road," if it be such as is recognized and enforced by the the Courts of other States, was not shown by the evidence in this case to have been violated by the defendant, even conceding for the argument that its wagon was at the moment of collision to the left of the center of the road. That fact standing alone does not, under the decisions, it is contended, constitute actionable negligence in the defendant, for there are circumstances, not only excusing a breach of the "law," but imposing a legal duty upon the traveller to break it.

In Maryland there is no statute, recognizing or defining the duty of travellers on meeting in the public highway, nor have we been able to discover any ruling of this Court recognizing or defining any such custom in this State on the subject. We are compelled therefore to look to the decisions of the Courts of other States for authority. *Cooley, Torts,* 666, thus states the custom: "The custom of this country, in some States enacted into statute law, requires that when teams approach and are about to pass in the highway each shall keep to the right of the center of the travelled portion of the road."

But, of course, the legal effect of this custom upon the rights and duties of travellers cannot be understood unless we take the custom with the rest of the law of the road. A public highway, and the rule only relates to such roads, is for the public benefit throughout its whole extent. The traveller is not required, it will be seen from the cases, at all times and under all circumstances to keep to the right of the center of the travelled part, but only "when teams approach and about to pass." At other times he is at liberty to drive to the right or the left, as he sees fit. *Durham* v. *Ruckliff,* 71 Me. 347; *Arton* v. *Heaven,* 2 Espinasse, 533; *Johnson* v. *Small,* 5 B. Monroe, 25; *Wrinn* v. *Jones,* 111 Mass. 360; *O'Maley* v. *Dora,* 7 Wisc. 236; *Brember* v. *Jones,* 67 N. H. 374; *Riepe* v. *Etting,* 89 Iowa, 83; *Cook* v. *Fogarty,* 103 Iowa, 500; *Dudley* v. *Bolles,* 24 Wendell, 472; *Wayde* v. *Lady Carr,* 2 Dowling & Ryland; *Branch* v. *Hanson,* 158 Mass. 18.

Applying the law of the road as construed in these·cases, it is difficult to discover of what act of commission or omission constituting negligence, the defendant was guilty.

He was on the travelled path, where he had a right to be walking his horses and looking out for teams as was his duty, with a heavy wagon entitled to right of way over the lighter vehicle, and the night was so dark that neither saw the other till the moment of collision. The defendant's driver had his foot on the brake, and shut it down and stopped his horses the moment he could. What more could any man have done? and the law we know requires of no man the performance of

what is impossible, and what was possible, he did.

But this is not all.    What does the testimony on the other hand show that the plaintiff was doing?    She was driving at a ten-mile gate on a dark night and in a specially dark place, on a much used road, not using her eyes to see the large and high seated wagon of the defendant with three horses abreast, one of them white, looming up before her, nor her ears to hear the rumble of the approaching wagon, the heavy footfalls of three heavy horses, or the noise of the tin measures jingling on the wagon and in it.    It is obvious that the accident would not have happened but for the fast driving of the plaintiff, for had she been in a walk, as the defendant was, her horse could have been arrested in time to prevent the accident, notwithstanding defendant may have been "over on her side."    For this reason alone we contend she is not entitled to recover. *Commrs. v. Wise*, 75 Md. 526.

So, also, it was contributory negligence, it is contended, for the plaintiff on such a night and place, not to have used her senses of sight and hearing for her protection.    *Bacon's case*, 58 Md. 485; *Reidel's case*, 87 Md. 157.    As was said by the Court in *Brooks* v. *Hart*, 14 N. H. 313: "But the traveller whose part of the way is trenched upon by another, cannot, for that reason, carelessly and imprudently rush upon the party, or his team or vehicle, and if he sustain an injury, recover damages therefor."    See also *Kennard* v. *Burton*, 25 Me. 49.

The theory of the plaintiff is that the mere fact, if it be a fact, that the defendant was on the left side of the road was evidence of negligence.    We have seen in the cases heretofore cited that the "law of the road" does not countenance this view of the custom.    In *Wrenn* v. *Jones*, 111 Mass. 360, it was expressly decided that such a fact alone was not evidence of negligence.    And, indeed, such a contention is so lacking in regard for the recognized habits of the travelling public that it makes the law of the road not a practical safeguard for travellers, as it is intended to be, where it exists, but an imposition upon the traveller, depriving him of the use

of the whole road and confining him to one-half of it only. Such a contention, it is submitted, is in law untenable and opposed to public practice.

*W. T. Warburton* (with whom were *Henry A. Warburton* and *Edwin H. Brown, Jr.,* on the brief), for the appellee.

In case of a collision, being on the wrong side of the road at the time is *prima facie* evidence of negligence. *Damon* v. *Scituate,* 119 Mass. 66; *Steel* v. *Burkhardt,* 104 Mass. 59; *Smith* v. *Gardner,* 11 Gray, 418; *Jones* v. *Andover,* 10 Allen, 18; *Spofford* v. *Harlow,* 3 Allen, 176; *Burdock* v. *Worrall,* 4 Barb. 596.

It is desirable to adhere to the law of the road, in order not to mislead the opposite party; and unless there is a clear mode of escape, the party who is on the proper side should not attempt any departure from the ordinary course, as he will make such an attempt at his own peril. *Chaplain* v. *Hawes,* 3 Car. and Pay. 554.

In driving at night, the rule to keep to the right of the road should be strictly adhered to as being the only mode of avoiding accident. *Cruden* v. *Fentham,* 2 Esp. 685; *Chaplain* v. *Hawes,* 3 Car. and Pay. 554; 14 E. C. L. 445; *Angell* v. *Lewis,* 20 R. I. 391; *White* v. *Gnædinger,* 7 Quebec Q. B. 156.

While driving at night, one failing to keep to the right is liable for any resulting injuries. *Shockley* v. *Shephard,* 9 Houston, 270; *Simmonson* v. *Stellenmerf,* 1 Edm. Sel. Cas. N. Y. 194.

A traveller upon the public highway has the right to assume that the driver of an approaching vehicle will obey the law of the road and drive to the right and to act on such assumption. *Daniels* v. *Clegg,* 28 Mich. 32; *Schimpf* v. *Schliter,* 64 Hun. N. Y. 463; *Angell* v. *Lewis,* 20 R. I. 391; *Wood* v. *Luscomb,* 23 Wis. 291.

The fact that the defendant at the time of a collision was on the wrong side of the road is evidence of negligence to go to the jury. *Spofford* v. *Harlow,* 3 Allen, 176; *Jones* v. *Andover,* 10 Allen, 18; *Smith* v. *Gardner,* 11 Gray. 418; *Damon* v.

*Scituate*, 119 Mass. 66; 20 Am. Rep. 315; *Randolph* v. *O'Rividen*, 155 Mass. 331; *Luedtke* v. *Jeffeny*, 89 Wis. 136.

JONES, J., delivered the opinion of the Court.

This is an appeal from a judgment rendered in the Court below against the appellant at the suit of the appellee for damages resulting to the appellee by reason of the alleged negligence of the appellant which the *narr.* charges as follows, "that it (the appellant) is the owner of large wagons or oil tanks used in the transportation and delivery of its oils and driven by its servants upon the public roads of the county in the prosecution of its business; that on the 21st day of December, 1903, the plaintiff while driving on the Elkton and Chesapeake City public road, to her home, exercising due care, the servant or servants of the defendant (appellant) having in charge one of its said teams while acting within the scope of its employment, carelessly and negligently drove the same against and over the carriage in which the plaintiff (appellee) was riding," and caused her to be thrown out and injured.    To this the defendant pleaded the general issue and trial was had before a jury during which no questions arose upon the evidence.

Upon the proofs submitted in the cause the plaintiff (appellee) asked three instructions to the jury and the defendant (appellant) four and filed special exceptions to the plaintiff's first prayer alleging absence of proof to support it.    The Court below granted all the prayers of the plaintiff, overruled the defendant's special exceptions to plaintiff's first prayer, rejected the defendant's first prayer and granted its others. The defendant excepted to this action of the trial Court in respect to the granting of the plaintiff's prayers and the overruling of its special exceptions and the rejection of its first prayer.    This exception presents the questions to be determined here.    The defendant's first prayer, as it appears in the record, is too general and was properly rejected on this ground if no other.    This we understand to be admitted.    This is not material, however, because substantially the same question is

raised by the special exceptions to the plaintiff's first prayer. If that was properly granted then the defendant's first prayer which affirmed the insufficiency of the plaintiff's evidence to support a recovery by the plaintiff was necessarily to be rejected.

The question thus raised will make necessary a reference to the evidence adduced by the plaintiff to sustain the action. As to some of the material parts of this there is no conflict with that of the defendant. Where such conflict occurs a question is presented falling exclusively within the province of the jury. The plaintiff's first prayer in general terms affirms the right of the plaintiff to recover if the jury should find that the injury complained of was caused by the negligence of the defendant's servants while acting within the scope of their employment, and driving its team upon the public highway; and "resulted directly from the want of ordinary care and prudence" on the part of such servants "and not from the want of ordinary care and prudence on the part of the plaintiff directly contributing to the injury." The second prayer put upon the defendant the burden of proof to show contributory negligence on the part of the plaintiff directly contributing to produce the injury complained of, to disentitle the plaintiff to recover on the grounds of such negligence; and the third instructed as to the measure of damages in the case of a finding for the plaintiff.

There is evidence in the record going to show the following facts. About six o'clock in the evening of December 21st, 1903, the appellant's (defendant below) servants, in the prosecution of its business as a manufacturer and vendor of oil, were driving a wagon belonging to the appellant on the public road in Cecil County running between the town of Elkton and Chesapeake City. The wagon was large and heavy— weighing from thirty to thirty-two hundred pounds when empty; and was drawn by three horses driven abreast. It was five-foot track with the single trees projecting from twelve to twenty inches past the hub on either side—making it thus to require a space of about seven feet in passing along the

road.   The outside horses traveled outside of the tracks of the wheels.   The wagon was being driven from Chesapeake City to Elkton.   Near the latter place and at the point of the accident there was a down grade in the road and the road was there twenty-eight or twenty-nine feet wide.   All of it could be used at this point.   There was no special traveled way.

On the right-hand side of the road going from Elkton, and the left-hand side approaching Elkton from Chesapeake City —the direction in which the wagon was being driven, there was a white washed board fence.   The wagon at the point and at the time of the accident was being driven so far to what was the left side of the road, when going from Chesapeake City to Elkton, that it was not possible for a buggy to pass between the wagon and the board fence.   There was no reason making it necessary for the wagon to be on that side of the road.   It could have been driven in the middle of the road when there would have been plenty of room for a buggy to have passed on either side.   The road from Elkton out beyond the place of accident was much traveled. "It is the main road leading out of Elkton to all points in the lower part of the county.   Teams are on it continually" says one witness.   There is more travel on it than on any road leading into Elkton and this travel continues all day and the early hours of the evening.   The servants of the defendant had used the road frequently and for a considerable time and were familiar with it and with the conditions.   The night of the accident was unusually dark and the darkness was increased at the place of the accident by conditions existing there.   The wagon had displayed no lights and no means were provided to give warning of its approach.

On the day and at the hour mentioned the appellee (plaintiff below) was driving to her home from Elkton on the road in question.   She was in a buggy and driving a horse that was old and safe to drive; and which could not be urged to much speed.   In driving she kept to what was the right side of the road going out from Elkton—the direction she was travelling.   At the place of the accident in question she met

the wagon of the defendant coming in the opposite direction, and as has been shown, being driven upon the same side of the road upon which the plaintiff was driving.   She was prevented by the darkness from seeing it until too close to it to avoid colliding with it.   Immediately upon becoming aware of the approach of the wagon she pulled her horse to the right, but at the same instant the two vehicles came into collision and the plaintiff was thrown from her buggy and injured and the buggy was broken and damaged.   There was evidence that the plaintiff was familiar with the road from driving over it frequently; and some from which it could be inferred that she kept to the right side of the road in driving over it on the occasion in question because she thought that the safe and proper thing to do.

In the foregoing summary of the evidence in the case there is enough appearing to be submitted to the jury on both branches of the inquiry involved in the plaintiff's *narr.*—that is as to negligence *vel non* on the part of the defendant's servants; and as to the exercise of ordinary prudence and care on the part of the plaintiff in the circumstances leading up to and attending the accident in question.   In the briefs in the case and in the oral argument there has been a good deal of discussion as to the effect to be given, in determining the question of negligence to what is affirmed to be the law of the road that persons in using the public highways must observe the rule of keeping to the right with a view to secure to all unobstructed and safe passage over the same.   The theory of the plaintiff, apparently, being that the Court can and ought to take judicial notice of such rule and apply the same to the conduct of parties in the given case; while it is contended on behalf of the defendant that the Court cannot take notice of, nor give effect, to the rule unless it be proved as a custom.   It is further contended on behalf of the defendant that, though the rule is to be applied in determining the questions indicated, the road can be used indiscriminately by persons passing over it until confronted with, and made aware of, the necessity for a change of course or of their position

thereon.    In other words it is only when persons, proceeding along the road from opposite directions, are meeting that it is necessary or required to observe the rule of going to the right that each may have free passage.    Consequently, it is argued, that it is not to be imputed to the defendant as negligence in this case that its team, at the time of the accident in question, was being driven upon the left instead of the right side of the road.

We do not deem it necessary, in this case, to pursue the inquiry thus raised.    If it be admitted that the servants of the defendant had the general right, in driving upon the road, to be with its vehicle upon any part of the same that for the time might suit their convenience or pleasure this right was not an absolute and unqualified one.    All other persons having occasion to use the highway would be entitled to the same right; and such right must of necessity be exercised by each and every one with reference to and regard for the rights and safety of every other.    It is not consistent with the rights and safety of others using a highway that a vehicle, such as is described as being in charge of the defendant's servants, should be driven over the same, in the conditions mentioned, without so regulating its position upon the road as to give such reasonably convenient opportunity as circumstances permitted for other vehicles to avoid collision therewith; or to have adopted and used some means of giving warning of its presence and approach.    The wagon of the defendant was heavy and cumbersome drawn by large and heavy horses three abreast.    It was necessarily slow in being changed from its course and could not be so changed, in an emergency, readily and quickly.    If it had been kept in the middle of the road which, there is evidence going to show, could readily have been done, opportunity would have been afforded to lighter vehicles susceptible of quick change and movement in their course to have gone to either side of the road that the situation made most practicable to escape collision with it.    It would have been but prudent too that a vehicle of that character and occupying the space that it did in proceeding along

the highway in the darkness described, and where the frequency of travel was such as it is shown to have been should have displayed some symbol or warning of its presence.

Our conclusion is that it was entirely proper that the case should be submitted to the jury and that the instructions for their guidance which were made the subject of exception were proper.   It has not been thought necessary to extend this opinion by taking up for review the many authorities cited on both sides in the arguments and briefs.   An examination of them has not developed any peculiar features appropriate to be applied here.   In each and all of them there seems to have been only the application of the familiar principles of the law of negligence to the facts of the particular case.   The judgment below will be affirmed.

> *Judgment affirmed, with costs to the appellee.*

(Decided January 10th, 1906.)